WILLIAM W. HOPPIN and others v. BENJAMIN BUFFUM and others.

In case of a dispute as to the right to vote at a meeting of a corporation, the books of the corporation [are *prima facie* [evidence as to who possesses that right.

A pledgor of stock which stands on the books of a corporation in the name of the pledgee, may, by suit in equity, compel a transfer to him, or oblige the pledgor to give him a proxy to vote ; but where the pledgor acquiesces for years in the control of the stock by the record owner, the pledgee, and makes no attempt to inform the corporation of his ownership until a contested election occurs, and then not until the votes are being or have been counted, it is too late to ask the interference of a court of equity with the declared result of such election.

Where stock stands in the name of " M., Trustee," he is the proper person to vote upon it, until the equitable owner, if any there be, shall seasonably assert his right to have it transferred to him.

A contested election of directors of a corporation was decided by votes cast by M. upon shares owned by E. P. T. and C. T. and pledged to M. as security for debts due him and others. Neither the ownership nor pledge appeared on the books of the corporation, where the stock had always stood in the name of " M., Trustee." The certificate was so issued and M. had always voted thereon without objection until the meeting, and no objection was then made until while the votes were being counted, or after they had been counted. *Held*, on an application for a *quo warranto* against the officers declared elected at such meeting, that judgment must be given for the respondents and the application be refused.

INFORMATION in the nature of a *quo warranto*, filed by the petitioners, to test the validity of the election held at the last annual meeting of the Providence and New York Steamship Company, which resulted in the election of the respondents with others, as directors of said company. The affidavits filed by the respective parties disclosed the following facts.

On the 27th day of December, 1866, the firm of Orray Taft & Co., deposited with Earl P. Mason, as trustee, for himself, the firm of Borden & Bowen, the firm of B. B. & R. Knight, endorsers, to the extent of $100,000 each, of certain promissory notes to the amount of $300,000, made by said Taft & Co., and for Charles L. Anthony, guarantor of the same, 883 shares of stock, in the Providence and New York Steamship Company, then a copartnership, anticipating the grant of a charter and organiza-

tion thereunder, as collateral security for said endorsements and guaranty.

At the May session of the General Assembly in the following year, a charter was granted to said Steamship Company, and the members of said copartnership, organized thereunder, passed by-laws for the government of the corporation, and, upon the transfer of the copartnership property by the trustees thereof to the corporation, the capital stock was apportioned among the stockholders, according as their interests appeared, the said Earl P. Mason having been credited as "trustee" on the stock ledger, with 883 shares of the capital stock, and having received a certificate running to "Earl P. Mason, trustee," for said number of shares, which he still holds.

The notes thus secured were overdue and unpaid, and said stock was liable to be advertised and sold, in accordance with the terms of hypothecation, long before the 9th day of June, 1870. Said Mason had always voted on said stock at corporation meetings prior to that day, without opposition or question, and up to said day the officers and members of said corporation had no knowledge or evidence, written or otherwise, as to said Mason's title to said stock, other than said stock ledger credit, and the certificate issued to him, evidencing the same.

The charter of said corporation provided that stockholders only were eligible as directors ; and the by-laws provided that only those stockholders should be entitled to vote at meetings as should, according to the company's stock ledger, have been holders of stock for ten days next preceding such meeting.

At the annual meeting of said corporation, held on said 9th day of June, 1870, the petitioners were nominated as candidates for directors in opposition to those of the old direction named as respondents. At said meeting, the petitioners claimed they gave notice to the officers and stockholders present, that said shares were the property of Edward P. Taft, instead of said Mason, and that they were hypothecated with said Mason as security merely, and then and there protested against said Mason's voting upon said shares for the respondents, and demanded that the votes upon a portion of the same should be given for the petitioners.

The respondents denied that any such notice was given, or that any such protest or demand was made at said meeting, or that any objection ever appeared, or was shown to said Mason's voting on said shares, other than a protest made by B. B. Knight, one of the petitioners, while the ballots were being collected, on the sole ground that he had an interest therein. The old directors, including the respondents, each of whom had 3,738 votes against 2,959 for each of the petitioners, were declared elected, and thereupon entered upon the discharge of their duties.

The petitioners claimed that, at said meeting, ballots upon said 883 shares were cast by said Mason, and counted for the respondents, and for that reason their election was illegal, and they should be excluded from further holding and exercising said office of directors.

*Bradley and Metcalf for the petitioners* :—

The petitioners claim to have been legally elected directors of the Providence and New York Steamship Company. Their claim is based upon the allegation that the respondents, who were declared elected and are holding said office, received 883 votes of Earl P. Mason, trustee, which were illegally cast by him, the stock on which he so voted being held by him as collateral security, and belonging to Cyrus Taft and Edward P. Taft, who alone were entitled to vote upon it at said election. It is not disputed that the result of the election was determined by said 883 votes, and that without them the petitioners would have been elected.

I. The only defence set up, viz., that no notice of the ownership of the stock, and of its being held as collateral, was given at the election, is immaterial, and is untrue in point of fact.

II. The doctrine that stock held as collateral does not entitle the holder to vote is a just and true one, well settled by au· thority, and in all the circumstances disclosed here, ought to be applied by removing the respondents and declaring the election of the petitioners.   *Vowell* v. *Thompson,* 3 Cranch, C. C. 428 ; *Scholfield* v. *Union Bank,* 2 Cranch, C. C. 115 ; *Merchants Bank* v. *Cooke,* 4 Pick. 405.

*B. F. Thurston and Gardner, for the respondents* :—

I.   B. B. Knight, one of the petitioners, was not eligible as a

director at said annual meeting, and could not have served had he been elected,—Sec. 4 of charter. Not being at the time a stockholder. And he is not properly a party to the petition, as he had no interest in the affairs of the corporation when the petition was filed. *Rex* v. *Brown*, 3 Term, 574; Angell and Ames on Corporations, 6th Ed., § 742. The other relators are barred from prosecuting this application for a *quo warranto*, because they were present and concurred at the time of the alleged objectionable election. *Rex* v. *Trevenen*, 2 Barn. and Ald. 339; *State* v. *Lehre*, 7 Rich, 234.

II. The burden is upon the petitioners to show that the 883 ballots were cast and counted as they claim. *Ex parte Murphy*, 7 Cow. 153; *First Parish in Sudbury*, v. *Stearns*, 21 Pick., 148; and the manner of casting votes and conducting an election, being corporate acts, can in a case between members, be shown only by the records. *Coffin* v. *Collins*, 17 Maine, 440; *Hudson* v. *Carman*, 41 Maine, 84.

III. Though the provisions of Section 24 of chapter 128 of the Revised Statutes do not directly apply to this case, the analogy would favor the trustee's right to vote. This charter is subject only to the provisions of chapter 125; and, by authority of the first section thereof, Article II of the By-laws was adopted. That by-law is valid and binding upon the members, and, under it, the trustee by the stock ledger test, was the proper person to vote. *The People* v. *Tibbetts and others*, 4 Cow. 358; *Vandyke* v. *Stout*, 5 Halst., N. J. Chan., 333; *Downing* v. *Potts*, 3 Zabriskie, 66; *In the matter of the Mohawk and Hudson River R. R. Co.*, 19 Wend., 135; *In the matter of the Long Island R. R. Co.*, 19 Wend. 36; *Mousséaux* v. *Urquhart*, 1 La. (Ann.) 482.

IV. Irrespective of the by-law, the fact that the stock stood in his name on the books as trustee was the test, and, without more, entitled him to vote. *Ex parte Barker*, 6 Wend., 509; *Ex parte Holmes*, 5 Cow. 426; *Ex parte Wilcocks*, 7 Cow. 402, and cases cited above. A pledgor who transferred his shares as collateral security, was compelled to make timely resort to a bill in equity to secure a power of attorney to vote on his pledged stock. *Vowell* v. *Thompson*, 3 Cranch, 429; and it would seem,

upon the authority of the *People of New York* v. *Kip et al.*, reported under note " a" to the case *People* v. *Tibbetts*, cited above, that the only person giving any notice, or making any protest, in this case, having at best a mere equitable interest, as a partner, would have found profit, if at all, in imitation of the example.

V.  The principle to be extracted from the preceding cases is, that the owner of the *legal title* to the stock has a right to vote upon it.  Therefore, if a party has merely mortgaged or pledged his stock, without parting with his legal title, his right to vote is not lost.  On the other hand, if he has actually parted with his legal title, although he has taken a secret agreement in the nature of a condition of defeasance, which is not of record on the books of the company, the right to vote is lost.  Corporations can only be guided by the title of record and are incompetent to settle disputed equitable titles.  Unless this be the rule, it would be in the power of a minority to prevent an election by raising embarrassing questions ·of title founded on equitable claims.

POTTER, J.  In this case the material facts are, that a certain number of shares in the corporation, owned by Edward P. Taft and Cyrus Taft, were pledged to Earl P. Mason as security for debts due to himself and others; but neither the ownership or the pledge appeared on the books of the corporation, where the stock had, from the formation of the corporation, stood in the name of " Earl P. Mason, trustee." The certificate was so issued, and he had always voted thereon, without objection, until the meeting of June 9, 1870, and voted upon them at that meeting, no objection having been made until while the votes were being counted, or as some of the affidavits say, after they were counted.  It is not disputed that the votes so thrown decided the election made on that day.  It is claimed, on one side, that the person who then made the protest stated that said Mason held the stock as security only.  This is denied, on the other side.

A person who pledges stock has the right to vote upon it until the title of the pledgee to the stock is perfected.  *Case of Jacob Barker*, 6 Wend. 509.  If Taft had appeared on the books as owner, and the books had shown the pledge, Mr. Taft's right

to vote on the stock could not have been disputed.  The object of the stock book,  and of requiring transfers of stock to be recorded by the corporation, is for the protection of the corporation, to enable it to know who are its members, who are entitled to dividends ; and for no purpose is it more important than to enable it to know who are entitled to vote in case of an election.   This doctrine is recognized by many authorities expressly, and by many others impliedly.   *Gilbert* v. *Manufacturing Iron Co.* 11 Wend. 627 ; *Bank of Utica* v. *Smalley*, 2 Cow. 770, 778 ; *Kirtright* v. *Bank of Buffalo*, 22 Wend. 348, 362 ; *Fisher* v. *Essex Bank*, 5 Gray, 373, 380 ; *Hoagland* v. *Bell*, 36 Barb. 57, 58.

And we think that in a case of a dispute as to a right to vote, the books of the corporation are the *primâ facie* evidence ; at any rate, the corporation cannot be required to decide a disputed right.   Of course, if the pledgor and pledgee, or the trustee and *cestui que trust*, agree that either shall represent the stock, or if the facts are admitted, that might be sufficient.  Upon any other rule, it could never be known who were entitled to vote, until the courts had decided the dispute.   The corporation or its officers would have to decide it for the time, and it would leave the election in uncertainty.

If the real owner wishes to have his name, or the true state of facts, appear on the books, he has his remedy in equity to compel a proper transfer, or to compel the pledgee to give a proxy, as was done in the case of *Vowell* v. *Thomson*, 3 Cranch, C. C. 428.   But when the real owner or pledgor acquiesces for years in the control of the stock by the record owner, and without any attempt to inform the corporation of the true state of facts until a contested election occurs, and then, not until the votes are being counted or have been counted, we do not think he presents a proper case to justify a court of equity in interfering with the result of the election as declared.   See *State* v. *Lehre*, 7 Rich. (Law,) 234, 256, 325.   In the present case the stock stood in the name of Earl P. Mason, trustee.   The books did not disclose the nature of the trust.   If any other person was the equitable owner of the stock, and entitled to have it

transferred to him, he should, if his right was disputed, assert it in season, and take the proper measures to enforce it. But if the trust was of such a nature that the trustee has the control and management of the property, and is to exercise his discretion concerning it, then he is the proper person to represent and vote upon it. And the corporation cannot be required to examine into the nature of the trust, with a view to decide as to the right to vote.

We have examined the cases cited by the petitioners. The cases of *Merchants Bank* v. *Cook*, 4 Pick. 405, and *Scholfield and others* v. *Union Bank*, 2 Cranch, C. C. 115, were cases in which the transfer was made directly to the bank itself. In the first case the question was, whether the pledgor (a sheriff) was so interested in the bank as to be disqualified from serving a writ in a suit in which the bank was a party. In the second case it was held that the pledgor had a right to vote. The report does not state whether the transfer on the books was absolute or conditional; but in that case it could make no odds, as, the pledge being to the bank itself, the bank must be presumed to know that it was a pledge, although the books might show an absolute transfer. In that case an injunction was granted to stay the election.

And the case of *Vowell* v. *Thomson*, 3 Cranch, C. C. 428, relates only to the remedy which the pledgor has in a court of equity to compel the pledgee to allow him to vote upon the stock. In that case the stock had been transferred to the plaintiff in trust as collateral security. The court, in their opinion, refer by way of analogy to the cases relating to advowsons; and a decree was made requiring the pledgee to give the pledgor a proxy to vote on the stock. If the corporation books had shown the true state of facts, this could hardly have been necessary. *The judgment must therefore be for the respondents.*